IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GARY LENOX and KIMERBLY                     Civil No. 05-1501-AA
LENOX,                                      OPINION AND ORDER

       Plaintiffs,

   vs.

EQUIFAX INFORMATION SERVICES
LLC, et al.

      Defendants.

---

Michael C. Baxter
Justin M. Baxter
Baxter & Baxter LLP
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
    Attorneys for Plaintiffs


Jeffrey M. Edelson
Markowitz, Herbold, Glade & Mehlhaf, P.C.
Suite 3000 Pacwest Center
1211 SW Fifth Avenue
Portland, OR 97204


Page 1 - OPINION AND ORDER

G. John Centro
Admitted Pro Hac Vice
King & Spalding
1180 Peachtree Street
Atlanta, GA 30309
    Attorneys for Defendant Equifax

AIKEN, Judge:

In this consumer credit dispute case, Gary Lenox and
Kimberly Lenox (plaintiffs) bring an action against Equifax
Information Services (defendant) for alleged violations of the
Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq.
Specifically, plaintiffs allege that defendant willfully and
negligently violated the FCRA by failing to follow reasonable
procedures to assure the maximum possible accuracy of information
in its credit reports.  This court has jurisdiction pursuant to
15 U.S.C. § 1681p.

The parties filed cross-motions for summary judgment.  In
addition, defendant seeks a declaratory judgment finding that
plaintiff's Homeq Servicing Corporation (Homeq) account could
legally be reported with a delinquent status from May 2000 to
March 2004.  Oral argument was heard on May 1, 2007.  Plaintiffs'
and defendant's motions are denied.

## I. BACKGROUND

Plaintiffs are "consumers,"[1] as defined within the FCRA.

---

[1] The FCRA defines "consumer" as "an individual." 15 U.S.C.
§ 1681a(c).

Defendant is a "consumer credit reporting agency,"[2] as defined within the FCRA, and, thus, is subject to the statutory requirements and duties imposed on it by the FCRA.    Defendant maintains a credit report for plaintiffs.

Plaintiffs allege, here, that defendant violated the statutory obligations imposed on credit reporting agencies by the FCRA by negligently and willfully reporting inaccuracies involving plaintiffs' credit accounts with Sears, Montgomery Wards, and Homeq that were contained in plaintiffs' credit reports.

A.    THE SEARS AND MONTGOMERY WARDS ACCOUNTS

On two occasions, plaintiffs filed a dispute with defendant regarding the alleged inaccurate reporting of both their Sears and Montgomery Wards accounts. Specifically, in April 2005, plaintiffs filed a dispute regarding what they alleged to be inaccuracies in the credit report maintained by defendant.    At that time, defendant reported both accounts as "Current Status-Charge Off."    Plaintiffs contend that the Montgomery Wards

---

[2] The FCRA defines "consumer reporting agency" as:

> [A]ny person which, for monetary fees, dues, or on a
> cooperative nonprofit basis, regularly engages in whole
> or in part in the practice of assembling or evaluating
> consumer credit information or other information on
> consumers for the purpose of furnishing consumer
> reports to third parties, and which uses any means or
> facility of interstate commerce for the purpose of
> preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f)

account had been paid in full on or about February 2002.  In
addition, they contend the Sears account had been fully paid off
in March 2002.  Plaintiffs disputed defendant's July 2001 report,
which stated that the account was 120 days late.  Further,
plaintiffs disputed the status line of "L" on their Sears
account, which they believed referred to "late."[3]  On May 16,
2005, plaintiffs received a letter from defendant with the
results of the investigation.  That letter provided that
defendant had investigated plaintiff's dispute and determined
that the Sears and Montgomery Wards accounts were reported
accurately.

In July 2005, after noticing that their credit reports still
contained the alleged inaccurate information, plaintiffs again
notified defendant of its dispute, and again, an investigation
results letter was mailed to plaintiffs on August 2, 2005,
indicating that an investigation was completed and again finding
that the reports were accurate.

Defendant conceded that on both occasions, it did not notify
Sears or Montgomery Wards of plaintiffs' dispute.  It instead
contends that plaintiffs never disputed the "Current Status" of
the accounts.  Defendant further contends that plaintiffs never
disputed the July 2001 payment history, but rather that
plaintiffs intended to dispute only the January 2001 and February

_____

[3] In fact, defendant later informed plaintiffs that "L"
refers to "charge off."

Page 4 - OPINION AND ORDER

2001 payments histories.  Finally, defendant argues that it accurately reported the status of plaintiffs' credit accounts with Sears and Montgomery Wards.

B.    THE HOMEQ SERVICING CORPORATION ACCOUNT

This dispute arises between plaintiffs and their mortgage lender, Money Store, and its successor, Homeq.  In May 2000, plaintiffs agreed to make an overdue[4] mortgage payment to their mortgage provider, Homeq. The payment was to be processed a few days later, on May 20, 2000, but due to an error on the part of Homeq, plaintiffs' check was deposited on the same day. Plaintiffs placed a stop payment on the check, incurring a $20 fee, however, the check was nonetheless processed by plaintiffs' bank.  As a result, plaintiffs' bank account was overdrawn, resulting in several checks returned for insufficient funds. Plaintiffs incurred $391.34 in bank fees.

Plaintiffs demanded that Homeq reimburse them for such costs, and according to plaintiffs, Homeq agreed.  On July 20, 2000, plaintiffs received a letter from Homeq stating that an investigation into the plaintiffs' reported dispute was in progress.

Over the course of several months that followed the incident, plaintiffs continued to contact Homeq for reimbursement

---

[4]At the time, plaintiffs conceded that they had experienced some financial difficulty and as a result, the Homeq account was 30 days overdue.

of their costs, however, Homeq failed to do so.  Plaintiffs then submitted what they believed to be a "qualified written request" pursuant to the Real Estate Settlement Procedures Act (RESPA).

Homeq did not provide reimbursements or respond to plaintiffs' letter for nearly three years.  Plaintiffs testified that, given the pending RESPA dispute, they believed their Homeq account was frozen and feared that a payment prior to resolution of the dispute would result in a concession; thus, they stopped making payments on their account.  Specifically, from May 15, 2000 to March 15, 2004, plaintiffs failed to make any mortgage payments to Homeq.

On May 9, 2003, plaintiffs received a letter from Homeq advising them that they remained obligated to make a payment every month.  In May 2003, plaintiff Gary Lenox discovered that his credit report housed by defendant reported the Homeq account as "1 time 60 days late" and with a previous status of 90-119 days past due in September 2000.[5]

In March 2004, plaintiffs resolved the dispute with Homeq by settling for an amount equating to approximately two years worth of payments.  With this payment, the account was considered paid off, and the balance was zero.  Plaintiffs contend that defendant continued to report a past due balance and delinquencies for their Homeq account for the months of September and October 2000.

---

[5] The information was not reported on the credit file of plaintiff Kimberly Lenox.

Page 6 - OPINION AND ORDER

On or about April 1, 2004, plaintiffs sought to refinance their mortgage with First Pacific.  However, they did not qualify for a loan because the Homeq account was reported by defendant as past due in the amount of $2,323.  Defendant ultimately stopped reporting the September and October 2000 delinquencies.  Plaintiffs seeks redress from defendant for the inaccurate status reported for Homeq in September 2000, October 2000, and May 2003.

## II. STANDARDS

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A "material" fact is one that is relevant to an element of a claim or defense and whose existence may affect the outcome of a suit. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987).  Substantive law on an issue determines the materiality of a fact. Id.  Further, whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of "pointing out" the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party shows the

Page 7 - OPINION AND ORDER

absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.  A scintilla of evidence, or evidence that is not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).

Special rules of construction apply when evaluating summary judgment motions: (1) All reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

### III. PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

A.    FAIR CREDIT REPORTING ACT CLAIMS

The FCRA is a comprehensive statutory scheme that governs the conduct of credit reporting agencies and seeks to ensure the "[a]ccuracy and fairness of credit reporting" through a variety of means. 15 U.S.C. § 1681.   The FCRA provides for compensation in the form of actual damages and attorneys' fees if a consumer reporting agency negligently fails to comply with any provision of FCRA. 15 U.S.C. § 1681o.  Further, a consumer may recover punitive damages for willful non-compliance. 15 U.S.C. § 1681n.

The plaintiffs move for summary judgment as to liability only, asserting negligent and willful violations of FCRA for the following claims:  First, plaintiffs allege that defendant

Page 8 - OPINION AND ORDER

negligently and willfully failed to reinvestigate their dispute notices with regard to the Sears and Montgomery Wards accounts in violation of section 1681i(a) on two occasions, in April 2005 and July 2005. Second, plaintiffs allege that defendant negligently and willfully failed to comply with the requirements set forth in the FRCA when it failed to truncate Gary Lenox's social security number in violation of section 1681g(a) on two occasions, in April 2005 and July 2005.

Defendant contends that summary judgment is not appropriate because genuine disputes of material fact exist. I agree. Specifically, regarding the Sears and Montgomery Wards accounts, it is disputed as to whether: (1) plaintiffs actually disputed the "Current Status" of the accounts; (2) plaintiffs actually disputed the July 2001 payment history, or intended to dispute only the January 2001 and February 2001 payments histories; and (3) whether the Sears account was actually 120 days or more late. Regarding plaintiffs' claim that defendant failed to truncate Gary Lenox's social security number, I find that plaintiffs failed to carry their burden to prove that genuine injury resulted from defendant's alleged violation.

1.   DUTY TO REINVESTIGATE UNDER THE FAIR CREDIT REPORTING ACT

The FCRA places a duty on those who furnish credit information to ensure that the information it provides is accurate. 15 U.S.C. § 1681s-2(a). A claim arises under § 1681i,

Page 9 - OPINION AND ORDER

where the credit reporting agency fails to comply with its duty
to reinvestigate. More precisely, pursuant to § 1681i(a)(1)(A),
a consumer reporting agency must reinvestigate an item in a
consumer's credit file after the consumer directly notifies the
agency of a possible error. Further, the credit reporting agency
must reinvestigate the disputed item before the end of the 30-day
period beginning on the date on which the agency receives the
notice of the dispute from the consumer.

Upon notice of a dispute from a credit reporting agency
pursuant to section 1681i(a)(2), the furnisher of credit
information must "conduct an investigation with respect to the
disputed information" and report the results of the
investigation. 15 U.S.C. § 1681s-2(b)(1). Although the Ninth
Circuit has not established a standard as to what constitutes an
acceptable "investigation" under 1681s-2(b), other courts have
held that the investigation must be "reasonable." See Cope v.
MBNA Am. Bank, NA, 2006 WL 655742 *4 (D.Or. Mar. 8, 2006)
("district courts in the Ninth Circuit and other circuit courts
have held those who furnish information to [credit reporting
agencies] must conduct reasonable investigations with respect to
disputed information[.]" )(citations omitted); Westra v. Credit
Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005) (listing
cases that hold that investigation must be "reasonable").
Finally, although the question of whether a defendant's
investigation is reasonable is a factual question normally

Page 10 - OPINION AND ORDER

reserved for trial, courts have held summary judgment proper

where "the reasonableness of the defendant's procedures is beyond

question." Id. (citing Crabill v. Trans Union L.L.C., 259 F.3d

662, 664 (7th Cir. 2001)).

More specifically, to establish a prima facie case of

failure to reinvestigate claim under section 1681i(a), plaintiffs

must demonstrate:

> (1)    The plaintiff's credit file contains inaccurate or
>        incomplete information.
> (2)    The plaintiff notified the credit reporting agency
>        directly of the inaccurate or incomplete information.
> (3)    The plaintiff's dispute is not frivolous or irrelevant.
> (4)    The credit reporting agency failed to respond to the
>        plaintiff's dispute.
> (5)    The failure to reinvestigate caused the consumer to
>        suffer damages.
> (6)    Actual damages resulted to the plaintiff.  Actual
>        damages may include damages for humiliation, mental
>        distress, and injury to reputation and
>        creditworthiness, even if the plaintiff has suffered no
>        out-of-pocket losses.

Thomas v. Trans Union LLC, 197 F.Supp.2d 1233, 1236 (D.Or. 2002)
(citations ommitted).

In addition, section 1681i(a)(2)(a) mandates prompt notice

of the dispute to the furnisher of information. 15 U.S.C. §

1681i(a)(2)(a).  It provides in pertinent part:

> Before the expiration of the 5-business-day period
> beginning on the date on which a consumer reporting
> agency receives notice of a dispute from any consumer
> or a reseller in accordance with paragraph (1), the
> agency shall provide notification of the dispute to any
> person who provided any item of information in dispute,
> at the address and in the manner established with the
> person.  The notice shall include all relevant
> information regarding the dispute that the agency has
> received from the consumer or reseller.

Id.

i.    THE SEARS AND MONTGOMERY WARD ACCOUNTS

Plaintiffs allege that defendant negligently and willfully failed to reinvestigate alleged inaccuracies regarding their Sears and Montgomery Wards accounts as required by section 1681i(a).  Plaintiffs notified defendant of their credit file dispute on two occasions.  After filing a dispute on April 2005, plaintiffs received a letter with results of the investigation from defendant on May 16, 2005.  That letter provided that defendant had investigated plaintiffs' dispute and determined that the Sears and Montgomery Wards accounts were reported accurately.  Again, in July 2005, plaintiffs notified defendant of its dispute, and again, an investigation results letter was sent to plaintiffs on August 2, 2005, stating that an investigation was completed and the reports were accurate.

However, defendant conceded that on both occasions it did not notify Sears or Montgomery Wards of plaintiffs' dispute. Plaintiffs argue that defendant's alleged failure to reinvestigate resulted in injury to plaintiffs, including the actual damage of denial of credit, lost opportunity to receive credit, damage to reputation, worry, distress, frustration, embarrassment, and humiliation.  Plaintiffs allege that defendant's repeated failures to contact Sears and Montgomery Wards constitute willful and negligent violations of §

Page 12 - OPINION AND ORDER

1681(a)(2), and that, therefore, no issue of material fact
exists.

FCRA imposes liability on any person who "willfully fails to
comply with any requirement" of the FCRA. 15 U.S.C. § 1681n(a).
The Ninth Circuit defines "willfulness" as "a company . . .
performs an act that violates FCRA, either knowing the action
violates the rights of consumers or in reckless disregard of
those rights[.]" Reynolds v. Hartford Financial Services, 435
F.3d 1081, 1097-98 (9th Cir. 2006), cert. granted, GEICO Gen.
Ins. Co. v. Edo, ___ U.S. ___, 127 S.Ct. 36 (2006). In Reynolds,
the court adopted the Third Circuit's standard of mens rea for
the FCRA, holding that it requires a "conscious disregard" of the
law. Id. That court further noted that "a company will not have
acted in reckless disregard of a consumer[']s rights if it has
diligently and in good faith attempted to fulfill its statutory
obligations[.]" Id. Finally, a determination of whether or not
there is willful disregard in a particular case will depend, in
part, on the obviousness or unreasonableness of the erroneous
interpretation. Id. at 1099.

The FCRA likewise imposes liability on any "consumer
reporting agency" that is "negligent in failing to comply with
any requirement" of the FCRA. 15 U.S.C. § 1681o(a); Thompson v.
San Antonio Retail Merchants Ass'n, 682 F.2d 509, 513 (5th Cir.
1982). In Thompson, the court applied a reasonable-person

Page 13 - OPINION AND ORDER

standard for negligence. Id.  There, the court found negligence
where the credit reporting agency's updating procedures failed to
foster accuracy and its verification process failed to uncover an
erroneous social security number. Id.

Here, there exists several disputed issues of material fact.
Defendant argues that plaintiffs neither disputed the "Current
Status" of their reports nor, specifically did plaintiffs fail to
dispute the July 2001 payment history and thus, defendant cannot
be held liable for failing to investigate a dispute that was
never raised.  Further, it is disputed whether plaintiffs can
make a prima facie showing under § 1681i(a) by proving their
credit file contained inaccurate or incomplete information.
Conversely, the defendant contends that the Sears and Montgomery
Wards accounts were accurately reported at all times.

Although I agree that defendant did not timely investigate
plaintiffs' disputes, I find that a question of material fact
exists as to defendant's liability.  Assuming, arguendo, that
defendant reported inaccurate information in plaintiffs' credit
file, a dispute was subsequently raised, and defendant failed to
reinvestigate the dispute, it remains that the obligations
contained in § 1681i do not impose strict liability on a credit
reporting agency. Thomas v. Trans Union LLC, 197 F.Supp.2d at
1237; Guimond v. Trans Union Credit Information Company, 45 F.3d
1329, 1333 (9th Cir. 1995).  Regarding the reinvestigation

Page 14 - OPINION AND ORDER

requirement of § 1681i, courts have applied the "reasonable procedures" defense "to protect users of credit information who consistently abide by the law, but who, in dealing with hundreds or thousands of instances, ultimately, by commission or omission, inadvertently violate the law in isolated instances."[6] Thomas, 197 F.Supp.2d at 1237 (citing Mathews v. Government Employees Insurance Co., 23 F.Supp.2d 1160, 1163 (S.D.Cal. 1998)).    Thus, the reasonable procedures defense creates a jury question. Guimond, 45 F.3d at 1333.

Viewing the evidence in the light most favorable to the non-moving party, I conclude that the notice was received by defendant on April 2005, and again in July 2005.  Thus, pursuant to the FCRA, defendant had a duty to reinvestigate the claim by the 30-day deadline.

The requirement for a § 1681i claim is the presence of inaccurate or incomplete information.  Regarding the Sears and Montgomery Wards accounts, defendant sets forth disputed issues as to whether plaintiffs' accounts were, in fact, accurately reported.  Whether defendant's reporting of plaintiffs' credit records was accurate is an issue best decided by the trier of

---

[6] By way of comparison, § 1681e(b) requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" in the consumer reports it prepares. 15 U.S.C. § 1681e(b).  Although § 1681i does not contain a explicit reasonable procedures provision, such a defense is available with respect to a claim under § 1681i. Id.

Page 15 - OPINION AND ORDER

fact.  Furthermore, the determination as to whether defendant's
action or inaction rises to the level of willfulness so as to
violate the statutory obligations of the FCRA is also a question
of fact.  "The reasonableness of the procedures and whether the
agency followed them will be jury questions in the overwhelming
majority of cases." <u>Guimond</u>, 45 F.3d at 1333.  Therefore, I find
that plaintiffs have not met their burden of showing that
material facts are undisputed.  As such, plaintiffs' motion for
summary judgment as to the Sears and Montgomery Wards account is
denied.

2.    THE REQUEST TO TRUNCATE PLAINTIFF'S SOCIAL SECURITY
      NUMBER

Plaintiffs further allege that defendant willfully and
negligently failed to comply with the requirements set forth in
the FRCA when it failed to truncate Gary Lenox's social security
number, as he requested.  Section 1681g sets out the requirements
that an agency should follow in making disclosures to consumers.
In addition, § 1681g(a) requires the reporting agency to truncate
a consumer's social security number, when the consumer so
requests and provides appropriate proof of the identity of the
requester.  The disclosure requirements in the FCRA are explicit
and require the consumer reporting agency, upon request, to
clearly and accurately disclose to the consumer:

        (1) All information in the consumer's file at the time
        of the request except that-

Page 16 - OPINION AND ORDER

> (A) if the consumer to whom the file relates requests
> that the first 5 digits of the social security number
> (or similar identification number) of the consumer not
> be included in the disclosure and the consumer
> reporting agency has received appropriate proof of the
> identity of the requester, the consumer reporting
> agency shall so truncate such number in such disclosure
> . . . .

15 U.S.C. § 1681g(a).

Thomas held that "[c]ourts regularly hold that FCRA does not impose strict liability on an agency." 197 F.Supp.2d at 1235. Further, "[i]t is logical that a consumer reporting agency should not be liable under FCRA for an employee's isolated mistakes in the face of the agency having and enforcing reasonable procedures [.]" Id. at 1238.   Rather, as found within §§ 1681(b) and 1681e(b), the FCRA contains a general requirement to maintain reasonable procedures. See also Waddell v. Equifax Information Services, LLC, 2006 WL 2640557, at *2-4 (D. Ariz. 2006) (reasonableness requirements and reasonableness of procedures defense of § 1681e(b) likewise apply to § 1681g).  The FCRA provides generally that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer." 15 U.S.C. § 1681n(a) (emphasis supplied); see Reynolds, 435 F.3d at 1097-98 (finding willful conduct where a company performs a violation "either knowing the action violates the rights of consumers or in reckless disregard of those rights").  The FCRA establishes similar liability for

Page 17 - OPINION AND ORDER

negligent non-compliance. 15 U.S.C. § 1681o.

Plaintiffs allege that: (1) on two separate occasions, in April and July 2005, plaintiffs requested in the Research Request Form that defendant truncate their social security number in their credit files; (2) defendant represented to plaintiffs that it had complied with their request; and (3) in an August 2, 2005 report, defendant continued to report the entire Social Security number on Gary Lenox's credit file.

Defendant does not dispute its obligation under the FCRA to truncate Gary Lenox's social security number.  In fact, defendant concedes it failed to truncate Gary Lenox's social security number upon his request.  Defendant instead argues several disputed issues of fact, contending that plaintiff failed to present evidence of a genuine injury caused by defendant's conduct or causation with respect to plaintiffs' alleged emotional distress so as to demonstrate a tangible harm resulting from its failure to truncate.  Yet, plaintiffs' motion for summary judgment is to liability only, and defendant's proffered testimony speaks to the issue of damages, rather than liability.

Viewing the evidence in the light most favorable to plaintiffs, I find that plaintiffs properly requested that Gary Lenox's social security number be truncated in April 2005 and July 2005.  Accordingly, as required by § 1681g(a), defendant, upon receipt of this request in writing, had a duty to truncate

Page 18 - OPINION AND ORDER

Mr. Lenox's social security number.  Defendant concedes that it
failed to truncate plaintiff's social security number.

Plaintiffs further allege that defendant's failure to
truncate the social security number was a negligent or willful
violation of § 1681g(a).  The state of the record before this
court makes it difficult to determine as a matter of law whether
defendant's failure to truncate Gary Lenox's social security
number rises to wilfulness or negligence.  Similarly, the
reasonableness of the agency's procedures remains a question of
fact.  Plaintiffs have failed to meet their burden of showing
that material facts are undisputed.  Therefore, plaintiffs'
motion for summary judgment as to the truncation of Gary Lenox's
social security number is denied.

IV. <u>DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND DECLARATORY
RELIEF</u>

Defendant moves for summary judgment on all claims brought
by plaintiffs relating to negative payment history reported to
Homeq during the months of May 2000 and March 2004, including
plaintiffs' claim against defendant for negligent violations of
§§ 1681e(b) and 1681i of FCRA and willful violations of §§
1681e(b) and 1681i of FCRA.  Defendant further moves for a
declaratory judgment against plaintiffs finding that plaintiffs'
Homeq account could legally be reported with a delinquent status
every month from May 2000 through March 2004.

Page 19 - OPINION AND ORDER

Under § 1681e(b), a credit reporting agency must follow reasonable procedures to assure the maximum possible accuracy concerning an individual.  Section 1681e(b) does not impose strict liability for any inaccurate credit report, but imposes a duty of reasonable care in preparation of the credit report. Thompson, 682 F.3d at 513.  Courts have employed a reasonable-person standard for negligence. Id.

The court must determine whether plaintiffs established a prima facie case of failure to reinvestigate claim under § 1681i(a).  In the context of this claim, such a determination requires an examination of the statutory provisions of RESPA.

A.   THE REAL ESTATE SETTLEMENT PROCEDURES ACT

Generally speaking, RESPA creates a duty upon a loan "servicer"[7] to respond to borrower inquiries. See 12 U.S.C. § 2605(e).  Specifically, RESPA provides that:

(A)  In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

---

[7] The term "servicer" means the "person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan) . . . ." 12 U.S.C. § 2605(i)(2).

Page 20 - OPINION AND ORDER

12 U.S.C. § 2605(e)(1)(A).

A "qualified written request," for purposes of RESPA, is defined as a:

> written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that . . . includes a statement of reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

Moreover, RESPA requires that upon the receipt of a qualified written request, the servicer must make appropriate corrections in the account of the borrower or after conducting an investigation, provide the borrower with a written explanation or clarification that explains why the servicer believes the account is correct. 12 U.S.C. § 2605(e)(2). Finally, RESPA provides that during the *60-day period* beginning on the date of the servicer's receipt of a qualified written request, "a servicer may not provide information regarding overdue payment, owed by such borrower and relating to such period or qualified request, to any consumer reporting agency . . . ." 12 U.S.C. § 2605(e)(3).

Defendant contends: (1) plaintiffs did not submit a dispute pursuant to RESPA; (2) assuming plaintiffs filed a RESPA dispute, RESPA did not suspend plaintiffs' obligations from making mortgage payments to Homeq for a period of almost 4 years; (3) again assuming a RESPA dispute was filed, it would only stay the

Page 21 - OPINION AND ORDER

matter for 60 days and thus, by September 2000, plaintiffs'
account was delinquent; (4) Homeq was thus not prevented from
reporting delinquencies to defendant; (5) defendant's reporting
of plaintiffs' accounts was, therefore, accurate; and (6)
plaintiffs attempts to dispute the status of their Homeq account
amounts to impermissible collateral attacks.

The crux of plaintiffs' argument is that the alleged pending
RESPA dispute stayed their payment obligations to Homeq for
almost four years.  Plaintiffs maintain they made a "qualified
written request" pursuant to RESPA. Plaintiffs further point to a
series of communications with Homeq during which plaintiffs
contend that Homeq representatives stated that plaintiffs'
account was "frozen" and thus, requested that plaintiffs wait for
the resolution of the matter.[8]  Plaintiffs testified that they
feared that any payment made prior to resolution of the dispute
would result in a concession.  Therefore, plaintiffs stopped
making payments on their account.

Both parties concede that Homeq erroneously processed

---

[8] By way of further illustration, during 2000, plaintiffs
communicated with Homeq about their dispute on or about: June 5,
June 7, June 12, July 5, July 19, July 20, July 28, August 4,
August 11,  and August 30.  During most of these calls,
plaintiffs argue that they were concerned about their Homeq
payments, but believed that their account was frozen.  Plaintiffs
failed to account for the lack of communication for a period of
two years, however.  On April 25, 2003 and May 29, 2003,
plaintiffs also sent a letter to the Federal Trade Commission
seeking help with their dispute.

plaintiffs' check, thus causing plaintiffs to incur $20 in stopped check fees and $391.34 in other bank fees. While it is also undisputed that Homeq did not reimburse plaintiffs for these amounts for nearly three years, it bears emphasis that this incident occurred in May 2000, and plaintiffs failed to make a single mortgage payment to Homeq anytime from May 2000 to March 2004.

In March 31, 2004, plaintiffs eventually resolved the dispute with Homeq by settling for an amount equating to approximately two years worth of payments. With this payment, the account was considered paid off. Plaintiffs contend that defendant continued to report a past due balance and delinquencies for their Homeq account for the months of September and October 2000.

On or about April 1, 2004, plaintiffs sought to refinance their mortgage with First Pacific, but failed to qualify for a loan because the Homeq account was reported by defendant as currently past due in the amount of $2,323. Defendant's records showed that plaintiffs' Homeq account had a delinquent status in September 2000, October 2000, and May 2003. Defendant ultimately stopped reporting the September and October 2000 delinquencies.

Viewing the evidence in the light most favorable to the non-moving party, I find disputed issues of material fact. Issues surrounding plaintiffs' alleged RESPA dispute may be dispositive

Page 23 - OPINION AND ORDER

in determining whether defendant, in fact, accurately reported
plaintiffs' Homeq account as delinquent and thus, whether
defendant violated its duties under the FCRA.  In addition,
assuming the dispute mechanism used by plaintiffs constituted a
"qualified written request," as defined by RESPA, the statute
only prohibits credit reporting agencies from reporting overdue
accounts for a *60-day period* beginning on the date of the
servicer's receipt of a qualified written request.  Thus,
considering the fact that plaintiffs' last payment to Homeq was
in May 2000, it is arguable that their Homeq payments were
delinquent in September 2000, October 2000, and May 2003.  Yet,
plaintiffs testified that through numerous communications
spanning nearly four years, they believed their Homeq account was
"frozen."  A determination of whether plaintiffs's account was,
in fact, "frozen" from May 2000 to March 2004, or any period
therein, is central to the issue of defendant's liability.
Because a determination of defendant's liability is surrounded by
disputed issues of fact, defendant's motions for summary judgment
and declaratory relief are denied.

CONCLUSION

Plaintiffs' motion for partial summary judgment (doc. 52) is
DENIED.  Defendant's motions for partial summary judgment and
///

///
Page 24 - OPINION AND ORDER

declaratory relief (doc. 49) are also DENIED.

IT IS SO ORDERED.

Dated this _7_ day of May 2007.


_____
                Ann Aiken
    United States District Judge